[No. 24593-4-III.   Division Three.   October 26, 2006.]

HARVEY B. HARDEN, *Appellant*, v. THE CITY OF SPOKANE, *Respondent*.

744

*William J. Powell* (of *Powell, Kuznetz & Parker, P.S.*), for appellant.

*James S. Craven*, *City Attorney*, and *Milton G. Rowland*, *Assistant*, for respondent.

¶1 Brown, J. — The trial court summarily dismissed Harvey Harden's employment complaint against the city of Spokane. Mr. Harden contends the trial court erred because he was entitled to receive a salary increase. However, reasonable minds could not disagree on these undisputed facts that Mr. Harden failed to seek review under his collective bargaining agreement. Further, Mr. Harden has not shown the city manager has a duty to present his job reclassification to the city council for implementation. We affirm.

## FACTS

¶2 Mr. Harden worked for the Spokane City Civil Service Commission for 34 years. He served as the chief examiner for 25 years. The chief examiner position was governed by a collective bargaining agreement (CBA).

¶3 Mr. Harden was required to contribute $4,987 to the city's retirement system on an annual basis, even though he no longer received an increase in benefits after about 30 years of service. Mr. Harden met with the commission in 2000 to request a salary adjustment equal to the amount of his retirement contributions. The commission agreed because it did not want to lose a key employee and forwarded the information to the city for implementation. The city manager initially approved the request on October 13, 2000, but then withdrew approval on November 16, 2000.

¶4 Apparently in response, and at Mr. Harden's urging, the commission met on November 22, 2000 and adopted a formal resolution to reclassify Mr. Harden's position from range 55 to range 57 to offset the retirement deduction, plus a little more. Mr. Harden forwarded a copy of the resolution to the city manager, who did not submit the chief examiner reclassification issue to the council. Neither the commission nor Mr. Harden appeared before the council to request a budget change.

¶5 Mr. Harden retired in June 2002. He sued the city in 2003, alleging both federal and state law claims. The city moved the case to federal court where the federal claim was dismissed. After remand to the superior court, the city successfully moved for summary judgment dismissal. Mr. Harden appealed.

## ANALYSIS

¶6 The issue is whether the trial court erred in granting the city summary judgment dismissal of Mr. Harden's complaint.

¶7 We review a trial court's summary judgment order de novo. *Hubbard v. Spokane County*, 146 Wn.2d 699, 706, 50 P.3d 602 (2002). We review the facts in a light most favorable to the nonmoving party. *Id.* at 707. Summary judgment is appropriate where no genuine issues of material fact exist and the issues can be resolved as a matter of law. CR 56(c); *Hubbard*, 146 Wn.2d at 707.

■ ¶8 A municipal charter governs the manner in which a city is operated. WASH. CONST. art. XI, § 10; SPOKANE CITY CHARTER § 3. It grants power to the city government. WASH. CONST. art. XI, § 10; SPOKANE CITY CHARTER § 4. The *Spokane City Charter* creates a Civil Service Commission and grants the commission the authority to "classify" city positions. SPOKANE CITY CHARTER §§ 52, 53(a).

■ ¶9 A CBA generally sets procedures to file employment related grievances. *Lew v. Seattle Sch. Dist. No. 1*, 47 Wn. App. 575, 577, 736 P.2d 690 (1987). Employees are required to utilize those procedures. *Id.*

¶10 Mr. Harden first contends he was not bound to follow the salary review procedures in the CBA since the commission reclassified his position. Disagreeing, the city responsively contends Mr. Harden was required to seek review under the CBA.

■ ¶11 Mr. Harden is subject to the CBA, which states: "The parties recognize that due to the nature and level of these positions, the City has the unilateral responsibility to establish salary levels." Clerk's Papers (CP) at 314. The agreement then establishes a procedure for employees to challenge the salary range for a specific classification. "If an employee, the Association, or management believe the salary range for a classification is not appropriate, they may submit a written request for review." CP at 315. The CBA sets no procedure for employees to challenge a job classification.

¶12 Mr. Harden initially requested a salary increase from the commission. The commission granted his request and forwarded it to the city. The city manager did not

approve the salary increase. The commission, at Mr. Harden's urging, responded by adopting a resolution to change Mr. Harden's job classification from 55 to 57 in order to circumvent the city manager's disapproval. Mr. Harden argues this reclassification is not covered by the CBA because the CBA does not address position reclassifications and merely addresses challenges to the "salary range" for a specific classification. But the city further argues that the CBA trumps the commission rules. We agree.

¶13 This case is not a classification review dispute as posed by Mr. Harden. No current review was conducted. Mr. Harden candidly explained in his deposition: "Everybody knew what the Commission had done, and everybody knew what I had tried to accomplish." CP at 214. At best, Mr. Harden described the situation as an "impasse" between the commission and the city. *Id*. Thus, Mr. Harden's argument that the commission may operate within its own designed budget is inapt. Similarly, we find no persuasive strength in the city manager's withdrawn consent. Nor is this a situation where Mr. Harden is dissatisfied with the results of a CBA Salary Review Committee because he did not submit to that CBA process. Notably, another union complained of Mr. Harden's attempt to circumvent normal procedures by seeking reclassification.

¶14 The CBA governs in the event the commission adopts rules inconsistent with the agreement. These undisputed facts show the commission merely acted to circumvent the city manager's disapproval of a pay raise by increasing Mr. Harden's range from 55 to 57. Thus, it acted inconsistently with the CBA. Therefore, Mr. Harden's argument that the commission acted in accordance with its duties under the city charter rings hollow. SPOKANE CITY CHARTER § 53(a).

¶15 Next, Mr. Harden contends the city manager had a charter duty to submit the reclassification/pay raise issue to the council. Mr. Harden cites three charter sections in support of his position: SPOKANE CITY CHARTER section

52(a), section 52(d),[1] and section 53(a). Appellant's Reply Br. at 7. This is a question of law. *See River Park Square, LLC v. Miggins*, 143 Wn.2d 68, 76, 17 P.3d 1178 (2001).

¶16 Generally, the cited sections address the commission's authority to: (1) employ a chief examiner, (2) control its budget, and (3) to classify city positions. Spokane City Charter §§ 52(a), 52(d), 53(a). They do not establish a duty upon the city manager to act in a certain manner. *Id.* As the city points out, Mr. Harden provides no other authority to show a duty exists. The city manager's function in preparing a proposed budget for council approval does not require the manager to submit every pay increase request to the council.

¶17 In sum, Mr. Harden has not shown the city manager had a duty, under the city charter, to present the reclassification of his position to the council for implementation. The city, not the commission, is Mr. Harden's employer. Under the city's retirement scheme, Mr. Harden's retirement benefits were capped when he reached approximately 30 years of service. As employer, the city acted properly under its charter and the CBA in dealing with Mr. Harden's pay increase request to offset the retirement cap.

¶18 Given all, the trial court did not err in granting summary dismissal of Mr. Harden's complaint. Having so reasoned, we do not analyze the city's laches argument.

¶19 Affirmed.

SWEENEY, C.J., and KULIK, J., concur.

Reconsideration denied December 15, 2006.

---

[1] Mr. Harden cites *Spokane City Charter* § 52(e) in his brief. It appears based on his arguments that he intended to cite § 52(d).