234 P.3d 225 (2010)
Scott E. STAFNE, Appellant,
v.
SNOHOMISH COUNTY and Snohomish County Planning Department, Respondents.
No. 62843-7-I.
Court of Appeals of Washington, Division 1.
May 24, 2010.
As Amended July 6, 2010.
Publication Ordered July 6, 2010.
*226 Scott Stafne, Granite Falls, WA, for Appellant.
Bree Urman, Laura Kisielius, Snohomish Cty. Pros. Office Civil Division, Everett, WA, for Respondents.
SCHINDLER, J.
¶ 1 Scott Stafne appeals dismissal of his lawsuit challenging the Snohomish County Council's decision to reject his proposal to rezone a portion of the property he owns in Twin Falls Estates from Commercial Forest Land (CFL) to Low Density Rural Residential (LDRR) and to amend the comprehensive plan land use map. Stafne asserts the Council erroneously rejected his request to change the zoning designation in violation of the Snohomish County Code. Stafne also appeals the denial of his cross motion for partial summary judgment. Stafne argues that as a matter of law, the County's previous decision to grant a boundary line adjustment changed the zoning on the portion of his property zoned CFL to LDRR. We affirm the trial court's decision to dismiss the lawsuit and deny summary judgment.

FACTS

The Twin Falls Property
¶ 2 In 1992, Twin Falls, Inc. acquired approximately 180 acres of land in Snohomish County from Three Rivers Timber Company. *227 The property was logged under forest practice permits issued by the Department of Natural Resources (DNR) and was classified in a timber tax category. The property contains waterfalls, two lakes, steep cliffs, and pockets of noncommercial forest land. Twin Falls intended to develop the property for low density residential and recreational use. Twin Falls segregated the property into 11 parcels.
¶ 3 In compliance with the Growth Management Act (GMA), chapter 36.70A RCW, in December 1992, the Snohomish County Council (Council) enacted an ordinance that adopted an interim forest land conservation plan and designated interim forest land pending adoption of a comprehensive plan. The ordinance designated the majority of the Twin Falls property as "Interim Commercial Forest or Interim Forest Reserve." Approximately 120 acres of the property was designated as Interim Commercial Forest, and approximately 20 acres at the southern end was designated as Interim Forest Reserve.
¶ 4 Twin Falls filed an appeal with the Central Puget Sound Growth Management Hearings Board (CPSGMHB), challenging the Council's decision to designate its property as Interim Commercial Forest and Interim Forest Reserve.[1] In a lengthy decision issued on September 7, 1993, the CPSGMHB concluded that the Council's decision to designate the Twin Falls property as Interim Commercial Forest and Interim Forest Reserve complied with the GMA and the State Environmental Policy Act, chapter 43.21C RCW.
¶ 5 In April 1994, the legislature changed the GMA definition of "forest land" from "primarily useful for growing trees" to "primarily devoted to growing trees." Laws of 1994, ch. 307, § 1.[2]
¶ 6 In August 1994, the Council considered a number of requests from land owners, including Twin Falls, to change the interim forest land designation. The Snohomish County Planning Department (SCPD) reviewed each request under the adopted interim forest land conservation plan and prepared an evaluation and recommendation for each property.
¶ 7 In Amended Motion 94-210, the Council removed the interim forest land designation from the Twin Falls property and a number of other properties. In deciding to change the interim forest land designation, the Council expressly noted the recent legislative amendment to the definition of "forest land" under the GMA.
8. The County Council takes official notice of the changes in the state law passed by the legislature in the 1994 session in ESSB 6228 related to the definition of forestry resources which are to be designated and protected under the Growth Management Act (GMA). These changes became effective after Planning staff and the Planning Commission had completed their recommendations on the instant petitions.
9. Although the interim forestry designation criteria will not be formally amended until Council considers the final forestry plan as part of GMA plan adoption, Council concludes that the FAC recommendation is consistent with and should be used as initial implementation of ESSB 6228 which defines forestry resources as those which are primarily devoted to production of long term commercial significance. The *228 phrase `primarily devoted to' also includes consideration of landowner's intent, as found by the Puget Sound Growth Planning Hearings Board in the case of Twin Falls, et al, v. Snohomish County (No. 93-3-0003 September 1993).
¶ 8 Consistent with the change in the statutory definition of forest land, the Council also concluded that the Interim Commercial Forest and Interim Forest Reserve designations should not apply to property "for which complete subdivision applications were received prior to their initial interim forestry designation, or for existing tracts of land less than 40 acres in size, regardless of ownership."
¶ 9 In specifically addressing the decision to remove the interim forestry designation on the Twin Falls property, Amended Motion 94-210 states:
This 180 acre parcel should be removed from any forestry designation based upon Council conclusion 10 above, on testimony and on the landowner's petition. The site is characterized by streams, wetlands, lakes and very steep slopes, so much so that one area landowner testified that a recent attempt to log in the area had to be aborted due to the steep terrain. The site is also intended by the landowner to be developed into low density recreational/residential use and is currently used for recreational purposes.
¶ 10 In 1995, the Council adopted a comprehensive plan under the GMA and designated the Twin Falls property as Low Density Rural Residential (LDRR).
¶ 11 In 1998, Twin Falls and DNR agreed to a land trade. The land Twin Falls received from DNR was designated in the comprehensive plan as Commercial Forest Land (CFL) and Forest Transition Area (FTA). A CFL designation means the forest land is appropriate for long term conservation in accord with the GMA. FTA designation means forest land is located adjacent to land that is not designated as forest land.

Stafne Property
¶ 12 Scott Stafne owns Lot 11 in Twin Falls Estates (TFE)[3]. Lot 11 consists of more than 20 acres and is designated LDRR. The northeast boundary of Lot 11 runs along the base of a cliff. The adjacent commercial forest land above the cliff was owned by DNR. In 2004, Stafne built a house on Lot 11.
¶ 13 In 2006, Stafne acquired three or four acres of land previously owned by DNR. The property was zoned CFL and FTA.
¶ 14 In May 2007, the County approved Stafne's request for a boundary line adjustment (BLA) to reconfigure Lot 11 to incorporate the land previously owned by DNR. Stafne recorded the BLA on May 31.

Annual Review
¶ 15 Under the GMA, comprehensive land plans and development regulations are subject to ongoing review and evaluation. RCW 36.70A.130(1)(a). A county must review and if necessary revise the comprehensive plan and development regulations every seven years. RCW 36.70A.130(4)(a).[4]
¶ 16 The GMA also requires counties to "establish and broadly disseminate to the public a public participation program" to consider amendments to the comprehensive plan on an annual basis. RCW 36.70A.130(2)(a). RCW 36.70A.470 requires counties to adopt procedures for interested parties, and applicants "to suggest plan or development regulation amendments. The suggested amendments shall be docketed and considered on at least an annual basis, consistent with the provisions of RCW 36.70A.130." RCW 36.70A.130(2)(b) states that "all proposals shall be considered by the governing body concurrently so the cumulative effect of the various proposals can be ascertained...."
¶ 17 In compliance with the requirements of the GMA, the Council established annual docket review procedures and criteria in chapter 30.74 of the Snohomish County Code *229 (SCC), "Growth Management Act Public Participation Program Docketing."
¶ 18 SCC 30.74.020 sets forth the requirements for a proposed amendment to the comprehensive plan or to the development regulations.[5] SCPD conducts an initial review and evaluation of proposed amendments according to the criteria set forth in SCC 30.74.030 and .040. The Council then holds a public hearing to determine "which of the proposed amendments should be further processed." SCC 30.74.050.
¶ 19 SCC 30.74.030 establishes the criteria for evaluating proposed amendments to the comprehensive plan or the development regulations. SCC 30.70.030 provides, in pertinent part:
(1) The department shall conduct an initial review and evaluation of proposed amendments, and assess the extent of review that would be required under the State Environmental Policy Act (SEPA) prior to county council action. The initial review and evaluation shall include any review by other county departments deemed necessary by the department, and shall be made in writing. The department shall recommend to the county council that the amendment be further processed only if all of the following criteria are met, excerpt as provided in SCC 30.74.040:
(a) The proposed amendment is consistent with the countywide planning policies, the GMA, and other state or federal law;
(b) The time required to analyze probable adverse environmental impacts of the proposed amendment is available within the time frame for the annual docketing process;
(c) The time required for additional analysis to determine the need for additional capital improvements and revenues to maintain level of service, when applicable to the proposal, is available within the time frame for the annual docketing process;
(d) Any proposed change in the designation of agricultural and forest lands is consistent with the designation criteria of the GMA and the comprehensive plan;
(e) The proposed amendment does not make a change in an area that is included in a proposed subarea plan scheduled for completion and final action by the council prior to the next docket submittal deadline;
...
(g) The time required for processing any required additional amendments not anticipated by the proponents is available within the time frame of the annual docketing process; and
(h) If the proposed amendment has been reviewed by the planning commission or county council as part of a previous proposal, circumstances related to the current proposal have significantly changed and support a plan or regulation change at this time.
¶ 20 Under SCC 30.74.040, a request to rezone property as part of the annual review also requires compliance with the criteria in SCC 30.74.030. SCC 30.74.040 provides, in pertinent part:
(1) The rezone request is for an implementing zone consistent with a concurrent proposed amendment to the *230 future land use map that meets the criteria of SCC 30.74.030;
(2) Public facilities and services necessary for development of the site, as defined in applicable capital facilities plans, are available or programmed to be provided consistent with the comprehensive plan and development regulations as determined by applicable service providers; and
(3) Site plan approval would not be required concurrent with the rezone under chapters 30.31A, 30.31B, or 30.31F SCC.

Annual Review Request
¶ 21 On October 29, 2007, Stafne submitted a docket proposal request and an environmental checklist to rezone and change the land use designation from CFL and FTA to LDRR for all of the previously owned DNR property acquired by TFE, including the portion of his property zoned CFL. The docketing proposal describes the land trade with DNR and the reasons for the request.
¶ 22 TFE has transitioned over the years under existing FTA regulations into a rural community with a rural community infrastructure. TFE owners do not want to use their property as CFL or to be foresters. Rather, they seek to preserve and enhance their rural lifestyle, which promotes privacy, scenic beauty, abundant wildlife, and recreation. Moreover, in this regard it is the position of the TFE Community that TFE does not meet the definition of Commercial Forest Land under the Growth Management Act, which is the County's basis for its CFL and FTA designations.
¶ 23 On March 31, 2008, SCPD issued an initial review and evaluation of Stafne's docketing proposal. The evaluation states, in part, that the docketing proposal does not meet the criteria of SCC 30.74.030(a) because it is inconsistent with the resource land designation, "and it will not conserve designated forest land such as the proposal site." In analyzing the criteria under SCC 30.74.030(d), the evaluation states that the property designated as CFL continues "to meet the classification for designation as forest land of long-term commercial significance" under the County's comprehensive plan policies. The evaluation also notes that other than fire service, no other public services or facilities are available in TFE.
¶ 24 On June 6, Stafne sent an e-mail to the Council criticizing SCPD's review and evaluation. Stafne points out the statutory change in the definition of forest land and asserts that SCPD failed to recognize TFE is an established rural community that is zoned LDRR. Stafne also states that SCPD relied on outdated boundary maps and SCPD inaccurately states that TFE does not have access to public utilities.
¶ 25 The purpose of this email is to state in succinct terms why the County Counsel [sic] should reject the Planning Staff's evaluation that Twin Falls Docket proposal should not be placed on the Final Docket. Rather than point out every mistake in the Planning Department's Report and Map, I will for purposes of outlining the position of Twin Fall Estates to the County Council point out three reasons why the County Council should not accept the Planning Department's initial evaluation.
I. The Planning Department failed to recognize Twin Falls Estates was an established rural community.
¶ 26 As my initial Docket proposal made clear Twin Falls Estates was asking that all the parcels within its rural community be classified as Low Density Rural Residential. The reason this was necessary was (1) because Twin Falls had acquired from the Department of Natural Resources some lots across the Twin Falls Estate which DNR had determined did not constitute economically viable commercial forest land; (2) this land (which was primarily classified as being in the Forest transition Zone) was boundary line adjusted by community lot owners so as to be incorporated as part of several existing parcels which had a low density rural residential classification; (3) this left portions of 5 lots and two lots in different and conflicting land classifications than existed for the rest of Twin Falls Estates.
¶ 27 Therefore, the Twin Falls Estates' proposal sought to clarify this County Councils' *231 previous decision after the legislature changed the definition of Commercial Forest Land that Twin Falls' Estates was and continued to be a low density rural residential community.
II. The Planning Department used wrong data and therefore misapplied the County's Forestry Criteria to the proposed Twin Falls Estates.
... The Staff's failure to consider the actual lots that existed at the time of the Proposal led it to wrongly conclude that that there was contiguous ownership of lots totaling 40 acres or more. Id. Both the Offices of the County Assessor and the County Recorder have advised the Planning Staff that the lots upon which its initial analysis was based no longer exist and that there is no contiguous ownership of lots totaling 40 acres or more.
...
III. The Planning Department failed to consider that all Twin Falls lots have access to public utilities.
¶ 28 ...
¶ 29 SCPD responded to Stafne's criticisms in a memorandum to the Council. The memorandum acknowledges that the evaluation does not reflect the recently recorded boundary line adjustments. While the memorandum states that the property continues to meet the criteria for designating the property as CFL and FTA, SCPD inaccurately relies on the previous statutory definition of forest land.[6] Stafne claims he did not receive a copy of the SCPD memorandum to the Council until after the June 9 public hearing.
¶ 30 At the June 9 public hearing, the Council considered approximately 50 docketing proposals, including the request to rezone and change the comprehensive plan designation for the previously owned DNR property acquired by Stafne and others in TFE. Stafne addressed the Council and submitted an oral statement in support of the docket proposal to change the zoning and land use map designation from CFL and FTA to LDRR. Stafne reiterated that the legislature had changed the definition of forest land "from land primarily `useful' to growing trees to land primarily `devoted' to growing trees." Stafne argued that the land DNR traded to TFE was not appropriate for commercial logging, and that because SCPD did not "consider the actual parcel configuration within Twin Falls Estates boundaries," the property did not meet the definition of CFL or FTA.
¶ 31 On June 16, the Council adopted Amended Motion No. 08-238 approving the final list of proposals it decided to consider. As reflected in Amended Motion No. 08-238, the Council decided to not place Stafne's docket proposal on the final docket, noting "Do Not Process Further."
¶ 32 On July 18, Stafne filed a complaint and petition against the County under the Land Use Petition Act (LUPA), chapter 36.70C RCW. Stafne challenged the Council's decision to reject his docketing proposal to rezone and change the comprehensive land use map for that the portion of his property zoned CFL to LDRR.[7] The crux of Stafne's lawsuit is that the County erroneously evaluated his docketing proposal under the criteria as adopted in SCC 30.74.030(a) and (d).
¶ 33 On October 20, Stafne filed an amended complaint and petition seeking relief under LUPA and issuance of a statutory writ of certiorari, writ of mandamus, writ of prohibition, or constitutional writ of certiorari. Stafne also sought a declaratory judgment that as a matter of law, the portion of his property acquired from DNR that was added to Lot 11 through a BLA does not meet the definition of "forest land" under the GMA.
¶ 34 The County filed a motion to dismiss under CR 12(b)(1) and CR 12(b)(6). The County argued the court lacked subject matter jurisdiction because the Council acted in a legislative capacity and Stafne failed to exhaust his administrative remedies by filing *232 an appeal with the CPSGMHB. In the alternative, the County argued the court should dismiss Stafne's LUPA action as untimely.
¶ 35 Stafne filed a cross motion for partial summary judgment on his declaratory judgment action. In response to the County's motion to dismiss, Stafne argued that filing an appeal to the CPSGMHB was futile and asked the court to grant his request for a writ of mandamus, writ of prohibition, or constitutional writ of certiorari. The court granted the County's motion to dismiss and denied Stafne's cross motion for summary judgment.

ANALYSIS
¶ 36 Stafne argues the trial court erred in dismissing his lawsuit and denying his cross motion for summary judgment. Stafne contends he is entitled to issuance of a writ because SCPD erroneously relied on the previous statutory definition of forest land in recommending the Council reject his docketing proposal under SCC 30.74. Stafne also contends that as a matter of law, approval of the BLA to incorporate the CFL designated property into Lot 11 changed the zoning designation from CFL to LDRR.

Dismissal of Complaint and Land Use Petition.
¶ 37 We first address the County's argument that the CPSGMHB has exclusive jurisdiction over the Council's decision to reject a docketing proposal to change the zoning designation. The County asserts the court properly dismissed Stafne's complaint and LUPA petition because Stafne failed to exhaust his administrative remedies by filing an appeal to the CPSGMHB.[8] Whether a tribunal has subject matter jurisdiction and Stafne failed to exhaust administrative remedies is a question of law. Woods v. Kittitas County, 162 Wash.2d 597, 607-08, 174 P.3d 25 (2007).
¶ 38 Growth management hearings boards have exclusive jurisdiction to determine compliance with the GMA. Woods, 162 Wash.2d at 614-15, 174 P.3d 25. RCW 36.70A.280 sets forth the matters subject to review by growth management hearings boards. RCW 36.70A.280 provides, in pertinent part:
(1) A growth management hearings board shall hear and determine only those petitions alleging either:
(a) That, except as provided otherwise by this subsection, a state agency, county, or city planning under this chapter is not in compliance with the requirements of this chapter, chapter 90.58 RCW as it relates to the adoption of shoreline master programs or amendments thereto, or chapter 43.21C RCW as it relates to plans, development regulations, or amendments, adopted under RCW 36.70A.040 or chapter 90.58 RCW. Nothing in this subsection authorizes a board to hear petitions alleging noncompliance with RCW 36.70A.5801; ...
¶ 39 Here, the CPSGMHB has routinely decided that it does not have jurisdiction over a decision to reject a proposed change in the zoning designation during the annual GMA docketing review.[9]See, e.g., SR 9/ U.S. 2 LLC v. Snohomish County, No. 08-3-0004, 2009 WL 1134039 (Cent. Puget Sound Growth Mgmt. Hrg's Bd. Apr. 9, 2009); Agriculture for Tomorrow v. Snohomish County, No. 99-3-0044, 1999 WL 508321 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. June 18, 1999); Cole v. Pierce County, No. 96-3-0009c, 1996 WL 678407 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. July 31, 1996); Agriculture for Tomorrow v. Snohomish County, No. 93-3-0009, 1999 WL 508321 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. June 18, 1999); Bidwell v. City of Bellevue, No. 00-3-0009, 2000 WL 1207507 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. July 14, 2000); Harvey v. Snohomish County, No. 00-3-0008, 2000 WL 1207506 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. July 13, 2000).
*233 ¶ 40 Although RCW 36.70A.280(1) expressly grants the CPSGMHB authority to review an "adopted comprehensive plan, development regulations, or permanent amendments....", the CPSGMHB has ruled that it has "`no jurisdiction to review a decision by a county not to adopt'" a proposed docketing amendment to change the zoning designation. SR 9/US 2 LLC, 2009 WL 1134039, at *3-4.
¶ 41 Specifically, the CPSGMHB has held that because the annual docketing procedure under RCW 36.70A.130 does not require a county to adopt proposed docketing amendments, it does not have jurisdiction to decide an appeal challenging a refusal to consider a proposed amendment. For example, in Harvey, the CPSGMHB ruled as follows:
Petitioners proposed comprehensive plan amendments to the County and the County declined to docket or adopt their proposed amendments. The County argued that the Board lacks jurisdiction over challenges to the County's failure to docket proposed comprehensive plan amendments. The GMA authorizes a local government to amend comprehensive plans annually; however, it does not require amendments. RCW 36.70A.130. Identical facts were before the Board in Agriculture for Tomorrow v. Snohomish County, where the County's Department of Planning and Development Services recommended that AFT's proposal not be processed. The Board granted the County's motion to dismiss in that case, relying on previous Board decisions. CPSGMHB Case No. 99-3-0004, Order on Dispositive Motion (Jun. 18, 1999).
In Cole v. Pierce County, a property owner appealed a county's refusal to adopt his proposed amendments that he alleged would `correct' the county's original land use designation of his property. CPSGMHB Case No. 96-3-0009c, Final Decision and Order (Jul. 31, 1996). The Board rejected Cole's argument, holding that "the County's failure to act cannot be construed to be an `action' under RCW 36.70A.130" and further holding that the actions challenged in Cole's petition were not taken in response to a GMA duty to act by a certain deadline, or in response to any other duty imposed by the Act, and that WAC 242-02-220(5) does not apply to this case." Cole, at 10-11. Consequently, the Board concluded that it did not have jurisdiction to resolve Cole's complaint. Id. at 11.
Harvey, 2000 WL 1207506, at *1.
¶ 42 Based on the decision of the CPSGMHB that it does not have jurisdiction to consider the decision to reject a docketing proposal to change a zoning designation, we conclude Stafne did not have to exhaust administrative remedies by filing an appeal with the CPSGMHB. Orion Corp. v. State, 103 Wash.2d 441, 457, 693 P.2d 1369 (1985) (resort to administrative procedures not required if futile). Consequently, Stafne had to file his challenge to the Council's decision in superior court under LUPA. Woods, 162 Wash.2d at 612, 174 P.3d 25 (citing Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 178, 4 P.3d 123 (2000)).
¶ 43 Where a land use decision is not subject to review by the growth management hearings board, a LUPA petition is the exclusive means to obtain judicial review of a local jurisdiction's final decision. Woods, 162 Wash.2d at 610, 174 P.3d 25. The express purpose of the LUPA statute is to "reform the process for judicial review of land use decisions made by local jurisdictions" by replacing "the writ of certiorari for appeal of land use decisions." RCW 36.70C.010, .030.
¶ 44 Former RCW 36.70C.020(2) defines "land use decision" as follows:
(2) `Land use decision' means a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:
(a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used, but excluding applications for permits or approvals to use, vacate, or transfer streets, parks, and similar types of public property; excluding applications *234 for legislative approvals such as area-wide rezones and annexations; and excluding applications for business licenses;
(b) An interpretative or declaratory decision regarding the application to a specific property of zoning or other ordinances or rules regulating the improvement, development, modification, maintenance, or use of real property; and
(c) The enforcement by a local jurisdiction of ordinances regulating the improvement, development, modification, maintenance, or use of real property. However, when a local jurisdiction is required by law to enforce the ordinances in a court of limited jurisdiction, a petition may not be brought under this chapter.
¶ 45 The Council's decision to reject Stafne's docketing proposal to change the zoning and land use designation on a portion of his property from CFL to LDRR is a final land use decision under RCW 36.70C.020(2). In Amended Motion No. 08-238, the Council made a final determination to reject Stafne's proposed docketing amendment to rezone and change the CFL and FTA zoning designation on the previously owned DNA property.
¶ 46 Stafne asserts the Council erroneously applied the adopted criteria under SCC 30.74.030(a) and (d) by relying on the former GMA definition of forest land and ignoring the effect of the BLA. Under LUPA, relief may be granted where "[t]he land use decision is a clearly erroneous application of the law to the facts." RCW 36.70C.130(1)(d).[10]
¶ 47 LUPA establishes a mandatory twenty-one day deadline for appealing the final land use decision of a local authority. RCW 36.70C.040(3). RCW 36.70C.040(3) provides in pertinent part that a LUPA "petition is timely if it is filed and served ... within twenty-one days of the issuance of the land use decision."
¶ 48 Here, there is no dispute that on June 16, 2008, the Council adopted Amended Motion 08-238 and rejected Stafne's docketing proposal to rezone a portion of his property and change the land use map designation. There is also no dispute that Stafne filed his complaint and land use petition more than twenty-one days after adoption of Amended Motion 08-238. RCW 36.70C.040(2) provides, in pertinent part that: "A land use petition is barred, and the court may not grant review, unless the petition is timely filed with the court and timely served...." Because Stafne did not timely file his LUPA action, the court did not err in dismissing his lawsuit against Snohomish County.[11]

Writ of Mandamus or Prohibition
¶ 49 LUPA does not preclude judicial review of a request for writ of mandamus or prohibition. RCW 36.70C.030(1)(b) states in pertinent part: "(1) ... This chapter does not apply to: ... (b) Judicial Review of applications for a writ of mandamus or prohibition...."
*235 ¶ 50 A writ of mandamus requires a state official "`to comply with law when the claim is clear and there is a duty to act.'" RCW 7.16.160; Paxton v. City of Bellingham, 129 Wash.App. 439, 444, 119 P.3d 373 (2005) (quoting In re Personal Restraint of Dyer, 143 Wash.2d 384, 398, 20 P.3d 907 (2001)). Mandamus is an extraordinary remedy that is not available when there is a "`plain, speedy and adequate remedy in the ordinary course of law.'" RCW 7.16.170; Paxton, 129 Wash.App. at 444-45, 119 P.3d 373.
¶ 51 A writ of prohibition is the counterpart to the writ of mandamus. A writ of prohibition is an extraordinary remedy that "may be invoked to prohibit judicial, legislative, executive, or administrative acts if the official or body to whom it is directed is acting in excess of its power." RCW 7.16.290; Brower v. Charles, 82 Wash.App. 53, 57, 914 P.2d 1202 (1996). As with a writ of mandamus, a writ of prohibition cannot be issued if there is a plain, speedy and adequate legal remedy. RCW 7.16.300; Leskovar v. Nickels, 140 Wash.App. 770, 774, 166 P.3d 1251 (2007).
¶ 52 We review the superior court's determination as to the availability of an adequate remedy at law for abuse of discretion. River Park Square, L.L.C. v. Miggins, 143 Wash.2d 68, 76, 17 P.3d 1178 (2001). We do not disturb the court's decision "unless the superior court's discretion was manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." River Park Square, 143 Wash.2d at 76, 17 P.3d 1178.
¶ 53 Stafne's allegation that the County erroneously applied the adopted criteria of SCC 30.74 by relying on an incorrect definition of forest land in denying his land use docketing proposal falls squarely within LUPA. The trial court did not abuse its discretion in deciding that Stafne had a plain, speedy and adequate legal remedy, and in denying his request for a writ of mandamus or prohibition.

Declaratory Judgment
¶ 54 Stafne argues the court erred in denying his cross motion for summary judgment. Stafne contends that because the County approved the BLA to incorporate the CFL property into Lot 11, as a matter of law, the newly-configured lot does not meet the statutory definition of forest land under the GMA. We review summary judgment de novo. City of Oak Harbor v. St. Paul Mercury Ins. Co., 139 Wash.App. 68, 71, 159 P.3d 422 (2007). A party is not entitled to a declaratory judgment if there is an adequate alternative remedy available. Grandmaster Sheng-Yen Lu v. King County, 110 Wash. App. 92, 98-99, 38 P.3d 1040 (2002). Because LUPA is the exclusive means of judicial review of the Council's decision, we conclude Stafne had an adequate alternative remedy.
¶ 55 Stafne's reliance on Chelan County v. Nykreim, 146 Wash.2d 904, 52 P.3d 1 (2002), is misplaced. In Nykreim, the County mistakenly granted a BLA that conflicted with the County's adopted development regulations. Nykreim, 146 Wash.2d at 911-12, 52 P.3d 1. The supreme court held that because the County's decision to grant the BLA was a final decision under LUPA, and the County did not timely appeal the decision under LUPA, the County could not challenge the validity of the BLA. Nykreim, 146 Wash.2d at 940, 52 P.3d 1.
¶ 56 Here, unlike in Nykreim, the County does not challenge the BLA or dispute that the decision to grant Stafne's request for a BLA is a final decision. Because Nykreim does not support Stafne's argument that granting the BLA changed the zoning or land use designation, the court did not err in denying his cross motion for summary judgment.[12]
¶ 57 We affirm the trial court's decision to dismiss Stafne's amended complaint and petition, and to deny his cross motion for summary judgment.[13]
WE CONCUR: ELLINGTON and COX, JJ.
NOTES
[1] Twin Falls v. Snohomish County, No. 93-3-0003, 1993 WL 839715 (Cent. Puget Sound Growth Mgmt. Hr'g Bd. Sept. 7, 1993).
[2] As amended, RCW 36.70A.030(8) defines "forest land" as follows:

`Forest land' means land primarily devoted to growing trees for long-term commercial timber production on land that can be economically and practically managed for such production, including Christmas trees subject to the excise tax imposed under RCW 84.33.100 through 84.33.140, and that has long-term commercial significance. In determining whether forest land is primarily devoted to growing trees for long-term commercial timber production on land that can be economically and practically managed for such production, the following factors shall be considered: (a) The proximity of the land to urban, suburban, and rural settlements; (b) surrounding parcel size and the compatibility and intensity of adjacent and nearby land uses; (c) long-term local economic conditions that affect the ability to manage for timber production; and (d) the availability of public facilities and services conducive to conversion of forest land to other uses.
[3] Stafne also owns another lot, Lot 16, in Twin Falls Estates. Lot 16 is not the subject of this lawsuit.
[4] Snohomish County last reviewed and revised the comprehensive plan in 2004.
[5] SCC 30.74.020 provides:

Any person proposing amendments to the comprehensive plan or development regulations under this chapter must submit the following to the department:
(1) A description of the proposed amendment including proposed map or text changes;
(2) The location of the property that is the subject of amendment on an assessor map dated and signed by the applicant, if the proposal is for a future land use map amendment;
(3) A legal description and a notarized signature of one or more owners, if a rezone is requested by owners concurrent with a requested future land use map amendment;
(4) An explanation of why the amendment is being proposed;
(5) An explanation of how the proposed amendment is consistent with the GMA, the countywide planning policies, and the goals and objectives of the comprehensive plan;
(6) If applicable, an explanation of why existing comprehensive plan language should be added, modified, or deleted; and
(7) A SEPA checklist.
[6] The SCPD memorandum also states that a zoning change is unnecessary because the existing "Forestry" zoning "is the implementing zone for both LDRR and Forest land use designation."
[7] Stafne's lawsuit only challenges the Council's decision as to his property.
[8] Snohomish County is within the jurisdictional boundaries of the CPSGMHB. RCW 36.70A.250(1)(b).
[9] At oral argument the County conceded that it would have filed a motion to dismiss if Stafne had filed a petition with the CPSGMHB challenging the Council's decision to reject his docketing proposal.
[10] The standards for review under LUPA are set forth in RCW 36.70C.130(1). In pertinent part, RCW 36.70C.130(1) provides:

(1) The superior court, acting without a jury, shall review the record and such supplemental evidence as is permitted under RCW 36.70C.120. The court may grant relief only if the party seeking relief has carried the burden of establishing that one of the standards set forth in (a) through (f) of this subsection has been met. The standards are:
(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
(d) The land use decision is a clearly erroneous application of the law to the facts;
(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
(f) The land use decision violates the constitutional rights of the party seeking relief.
[11] The court also did not abuse its discretion in dismissing Stafne's lawsuit requesting a constitutional writ of certiorari because Stafne had an adequate remedy at law. Snohomish County v. State Shorelines Hearings Bd., 108 Wash.App. 781, 785, 32 P.3d 1034 (2001).
[12] We also note that as part of his request for a BLA, Stafne agreed that approval of the BLA "does not guarantee or imply the subject property may be developed or subdivided and boundary line adjustment approval may not be grounds for approval of subsequent modification or variance requests."
[13] We also reject Stafne's argument that the criteria for annual review of docketing proposals as adopted in SCC 30.74.030 and .040 is unconstitutional, on its face and as applied to the decision to reject his proposal. A legislative enactment is presumed to be constitutional and a party challenging the enactment has the burden of proving unconstitutionality beyond a reasonable doubt. Island County v. State, 135 Wash.2d 141, 146, 955 P.2d 377 (1998). Stafne's premise that the procedures under SCC 30.74 prevent judicial review of the County's decisions is unfounded. As discussed, a docketing decision to reject a proposal is subject to judicial review under LUPA. Woods, 162 Wash.2d at 612, 174 P.3d 25.