[No. 26708-0-II. Division Two. September 20, 2002.]

RANDY BOSS, *Appellant*, v. THE DEPARTMENT OF TRANSPORTATION, *Respondent*.

*Randy Boss*, pro se.

*Christine O. Gregoire, Attorney General*, and *Deborah L. Cade, Assistant*, for respondent.

SEINFELD, J. — In June 1999, the Washington State Department of Transportation (DOT) and United Infrastructure Washington, Inc., entered into an agreement to finance, develop, and operate a second Tacoma Narrows bridge. DOT and the Federal Highway Administration prepared a single environmental impact statement to comply with both the National Environmental Policy Act of 1969 (NEPA) and the State Environmental Policy Act

(SEPA). Randy Boss filed a SEPA challenge to the adequacy of the environmental impact statement (EIS) in Thurston County Superior Court.

The trial court found Boss's petition to be inadequate because it failed to challenge the underlying governmental action and further found that DOT did not need to satisfy SEPA requirements because DOT was using an EIS prepared under NEPA. Thus, it granted DOT's motion to dismiss Boss's petition on summary judgment.

We hold that Boss's petition was adequate, but we agree with the trial court that the EIS fits within SEPA's exemption for a "previously prepared" NEPA EIS. Thus, the EIS was not subject to further review under SEPA and DOT was not required to comply with SEPA adoption requirements. Consequently, we affirm.

## FACTS

In June 1999, as part of the Public-Private Transportation Initiatives program, chapter 47.46 RCW,[1] DOT and United Infrastructure formed an agreement for the financing, development, and operation of a new Tacoma Narrows bridge.[2] The agreement required the parties to comply with all SEPA and NEPA requirements, including "the completion of any and all environmental documents required." Clerk's Papers (CP) at 77. The agreement identified DOT and the Federal Highway Administration as "co-lead agencies" on the project. CP at 77.

---

[1] Under this program, DOT may negotiate and enter into agreements with private entities to study, plan, design, construct, operate and maintain transportation systems and facilities known as "demonstration projects." RCW 47-.46.030(1).

[2] The Washington Supreme Court has since held that portions of the agreement violated state law. *See State ex rel. Peninsula Neighborhood Ass'n v. Dep't of Transp.*, 142 Wn.2d 328, 341-46, 12 P.3d 134 (2000).

DOT and the Federal Highway Administration together prepared an EIS[3] to satisfy both NEPA and SEPA. They completed the draft EIS in July 1998 and published the final statement in January 2000. On March 15, 2000, the Federal Highway Administration issued its record of decision, which selected the preferred project alternative and approved the final environmental documents under NEPA. On the same date, DOT notified United Infrastructure of its final project approval and it also published a notice of action pursuant to RCW 43.21C.080, advising the public that April 19, 2000, was the deadline for filing any challenge to the action under SEPA.

Boss filed a timely "Notice of Appeal of Final Environmental Impact Statement, Pursuant to RCW 43.21C." CP at 3 (emphasis omitted). According to Boss's petition: "This is an appeal, as authorized under the provisions of RCW 43.21C.075, to the adequacy of the overall environmental review and the lack of adequate mitigation measures as well as an appeal to the sufficiency of the procedural provisions as they apply to the subject [EIS]." CP at 4. He then listed 41 specific claims of error under SEPA and its regulations.

DOT moved for summary judgment, contending that (1) SEPA does not apply where the co-lead agencies prepared an adequate EIS under NEPA, (2) Boss's petition was fatally flawed because it did not challenge the underlying governmental action, and (3) the EIS satisfied SEPA. Finding for DOT on the first two issues, the trial court granted DOT's summary judgment motion and subsequently denied Boss's motion for reconsideration. Boss now appeals.

## DISCUSSION

As this is a review of a summary judgment decision, our inquiry is the same as the trial court's. *Wilson v. Steinbach,*

---

[3] Although SEPA uses the phrase "detailed statement," the SEPA regulations equate a "detailed statement" with a final environmental impact statement. WAC 197-11-738.

98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate if the evidence, viewed in the nonmoving party's favor, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995).

## I. RCW 43.21C.075—Linkage to Governmental Action

DOT asserts that Boss failed to challenge the underlying governmental action, its approval of the Tacoma Narrows bridge project, as RCW 43.21C.075 requires. Boss disagrees.

The legislature requires that appeals under SEPA be linked to a specific governmental action:

(1) Because a major purpose of this chapter is to combine environmental considerations with public decisions, *any appeal brought under this chapter shall be linked to a specific governmental action*. [SEPA] provides a basis for challenging whether governmental action is in compliance with the substantive and procedural provisions of this chapter. [SEPA] is not intended to create a cause of action unrelated to a specific governmental action.

(2) Unless otherwise provided by this section:

(a) *Appeals under this chapter shall be of the governmental action together with its accompanying environmental determinations.*

. . . .

(6) . . . .

(c) *Judicial review under this chapter shall without exception be of the governmental action together with its accompanying environmental determinations.*

. . . .

(8) For purposes of this section . . . , the words *"action"*, *"decision"*, and *"determination"* mean substantive agency action including any accompanying procedural determinations under this chapter . . . . The word *"action" in this section . . . does not mean a procedural determination by itself made under this*

*chapter.* The word "determination" includes any environmental document required by this chapter and state or local implementing rules.

RCW 43.21C.075 (emphasis added).

■ "The general rule in both administrative and judicial SEPA appeals is that they must combine review of SEPA issues with the related government action." *State ex rel. Friend & Rikalo Contractor v. Grays Harbor County,* 122 Wn.2d 244, 249, 857 P.2d 1039 (1993). The purposes of this linkage requirement are to "preclude judicial review of SEPA compliance before an agency has taken final action on a proposal, foreclose multiple lawsuits challenging a single agency action and deny the existence of 'orphan' SEPA claims unrelated to any government action." *Friend & Rikalo,* 122 Wn.2d at 251 (citing RICHARD L. SETTLE, THE WASHINGTON STATE ENVIRONMENTAL POLICY ACT § 20, at 244-45 (1993)).

■ Here, Boss entitled his pro se petition, "NOTICE OF APPEAL OF FINAL ENVIRONMENTAL IMPACT STATEMENT, PURSUANT TO RCW 43.21C." CP at 3. He identifies DOT as the co-lead agency of the "Final Environmental Impact Statement and Section 4(f) Evaluation, which is the subject of this appeal." CP at 4. But in the body of his petition, his sole factual allegation is that DOT issued a project approval letter that constituted DOT's notice of action under RCW 43.21C.080 and that finalized the EIS.

Boss characterizes his cause of action as "an appeal . . . to the adequacy of the overall environmental review and the lack of adequate mitigation measures as well as an appeal to the sufficiency of the procedural provisions as they apply to the subject [EIS]." CP at 4. But he does link DOT's approval of the bridge project, which is the relevant governmental action, to his 41 challenges to the EIS. Thus, he recognizes that the governmental action took the form of DOT's letter of project approval to United Infrastructure.

DOT's letter authorized United Infrastructure to continue with project design and to proceed with financing,

construction, and operation of the second Tacoma Narrows bridge. DOT noted that its "approval is based on the results and content of the environmental documents for the Proposed Transportation Facilities . . . , including the . . . Environmental Impact Statement . . . and its administrative record." CP at 100.

DOT argues that "[a]n appeal of the underlying governmental action would be an allegation that the agency action was taken in a manner contrary to law in that it was inconsistent with or failed to comply with the requirements of SEPA." Resp't's Br. at 15. But as DOT based its project approval on the environmental documents, including the EIS, DOT's own definition indicates that Boss's challenge to the legal sufficiency of the EIS is an appeal of the underlying governmental action. Finally, dismissing Boss's petition would not further any of the purposes for SEPA's linkage requirement. *See Friend & Rikalo*, 122 Wn.2d at 251. Consequently, the trial court erred in granting summary judgment to DOT on this issue.

## II. NEPA & SEPA—Simultaneously Prepared EIS

Boss argues that because the NEPA/SEPA EIS was a single, simultaneously prepared and published document, it was not a "previously prepared" NEPA document and, thus, DOT was not exempt under RCW 43.21C.150 from satisfying all of SEPA's requirements. DOT contends that as the EIS was prepared before project approval, the government action at issue here, the EIS was "previously prepared" and, thus, was not subject to further review under SEPA. We agree.

SEPA provides as follows:

The requirements of RCW 43.21C.030(2)(c) pertaining to the preparation of a detailed statement by branches of government shall not apply when an adequate detailed statement has been *previously prepared* pursuant to the national environmental policy act of 1969, in which event said prepared statement may be utilized in lieu of a separately prepared statement under RCW 43.21C.030(2)(c).

RCW 43.21C.150 (emphasis added). *See also* WAC 197-11--600 through 640 (regulations governing use of existing environmental documents). When the legislature adopted this section in 1974, it referenced an EIS that "is prepared" pursuant to NEPA. LAWS OF 1973-74, 1974 1st Ex. Sess., ch. 179, § 12.[4] The purpose of the 1974 legislation was "to establish methods and means of providing for full implementation of [SEPA] in a manner which reduces duplicative and wasteful practices, establishes effective and uniform procedures, encourages public involvement, and promotes certainty with respect to the requirements of the act." LAWS OF 1973-74, 1974 1st Ex. Sess., ch. 179, § 1.

The legislature, without explanation, amended this section in 1975 to replace the "is prepared" original language with the "has been previously prepared" language that appears in the section today. LAWS OF 1975, 1st Ex. Sess., ch. 206, § 1; 2 HOUSE JOURNAL, 44th Leg., 1st Ex. Sess. 2051 (Wash. 1975). It appears that the primary purpose of this amendment was to delete other language that made RCW 43.21C.150 inapplicable to thermal power plant sites. *See* LAWS OF 1975, 1st Ex. Sess., ch. 206, § 1; 2 HOUSE JOURNAL, 44th Leg., 1st Ex. Sess. 2051 (Wash. 1975).

 Our goal in construing a statute is to effectuate the legislative intent, which we ascertain "from the statutory text as a whole, interpreted in terms of the general object and purpose of the legislation." *Group Health Coop. of Puget Sound, Inc. v. Dep't of Revenue*, 106 Wn.2d 391, 401, 722 P.2d 787 (1986); *see also Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001). But a clear and unambiguous statute is not subject to judicial construction. *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 515, 910 P.2d 462 (1996).

---

[4] The original section provided:

The requirements of RCW 43.21C.030(2)(c) pertaining to the preparation of a detailed statement by branches of government shall not apply when an adequate detailed statement *is prepared* pursuant to [NEPA], in which event said prepared statement may be utilized in lieu of a separately prepared statement under RCW 43.21C.030(2)(c)[.]

LAWS OF 1973-74, 1974 1st Ex. Sess., ch. 179, § 12 (emphasis added).

■■ The plain language of RCW 43.21C.150 and its corresponding regulations suggest a legislative intent that this section apply where there is an existing EIS. Here, the co-lead agencies, DOT and the Federal Highway Administration, together prepared an EIS that they intended would comply with both NEPA and SEPA. In deciding if there was compliance with SEPA, and RCW 43.21C.150 in particular, we must determine the meaning of the phrase "previously prepared."

We believe that the legislature intended the statutory phrase "previously prepared" to mean that the NEPA EIS must be prepared before the agency takes action. Here, the joint EIS was prepared *before* the agency action at issue, DOT's final project approval. Thus, the fact that there was not a separate NEPA EIS that preexisted the EIS challenged here does not preclude application of RCW 43-.21C.150's exemption. Further, our reading of the phrase "previously prepared" is consistent with the legislature's intent to reduce duplicative and wasteful practices. *See* LAWS OF 1973-74, 1974 1st Ex. Sess., ch. 179, § 1. Consequently, as the NEPA/SEPA EIS was prepared before DOT issued its final project approval, RCW 43.21C.150 exempts the EIS from further review under SEPA.

■■ This leads us to another critical question, whether DOT must comply with SEPA regulatory requirements for the adoption of a NEPA EIS before it may utilize the EIS? Boss generally points to the requirements in WAC 197-11--610(3) for adopting a "NEPA EIS as a substitute for preparing a SEPA EIS."[5] But Boss does not explain how DOT

---

[5] WAC 197-11-610 governs the use of NEPA documents and it provides:

(1) An agency may adopt any environmental analysis prepared under . . . NEPA by following WAC 197-11-600 and 197-11-630.

(2) A NEPA environmental assessment may be adopted to satisfy requirements for a determination of nonsignificance or EIS, if the requirements of WAC 197-11-600 and 197-11-630 are met.

(3) An agency may adopt a NEPA EIS as a substitute for preparing a SEPA EIS if:

failed to comply with any applicable adoption requirements.[6]

Generally, to adopt a NEPA EIS as a substitute for preparing a SEPA EIS, (1) an agency must satisfy the requirements of WAC 197-11-600 and WAC 197-11-630;[7]

---

(a) The requirements of WAC 197-11-600 and 197-11-630 are met (in which case the procedures in Parts Three through Five of these rules for preparing an EIS shall not apply); and

(b) The federal EIS is not found inadequate: (i) By a court; (ii) by the council on environmental quality (CEQ) (or is at issue in a predecision referral to CEQ) under the NEPA regulations; or (iii) by the administrator of the United States Environmental Protection Agency under section 309 of the Clean Air Act, 42 U.S.C 1857.

(4) Subsequent use by another agency of a federal EIS, adopted under subsection (3) of this section, for the same (or substantially the same) proposal does not require adoption, unless the criteria in WAC 197-11-600(3) are met.

(5) If the lead agency has not held a public hearing within its jurisdiction to obtain comments on the adequacy of adopting a federal environmental document as a substitute for preparing a SEPA EIS, a public hearing for such comments shall be held if, within thirty days of circulating its statement of adoption, a written request is received from at least fifty persons who reside within the agency's jurisdiction or are adversely affected by the environmental impact of the proposal. The agency shall reconsider its adoption of the federal document in light of public hearing comments.

[6] In response to our order for the taking of additional evidence, the trial court found that DOT complied with all applicable requirements of WAC 197-11-600, -610, and -630. The court found that DOT "used the EIS unchanged" and that "it was not required to adopt the EIS under WAC 197-11-600(4)(a)" because that provision does not apply "to agencies that are acting on the same proposal for which the EIS was prepared." CP at 214.

[7] WAC 197-11-600, addressing the use of existing environmental documents, provides:

(1) This section contains criteria for determining whether an environmental document must be used unchanged and describes when existing documents may be used to meet all or part of an agency's responsibilities under SEPA.

(2) An agency may use environmental documents that have previously been prepared in order to evaluate proposed actions, alternatives, or environmental impacts. The proposals may be the same as, or different than, those analyzed in the existing documents.

(3) Any agency acting on the same proposal shall use an environmental document unchanged, except in the following cases:

(a) For DNSs [Determination of Non-Significance], an agency with jurisdiction is dissatisfied with the DNS, in which case it may assume lead agency status (WAC 197-11-340(2)(e) and 197-11-948).

(b) For DNSs and EISs, preparation of a new threshold determination or supplemental EIS is required if there are:

and (2) the NEPA EIS must not have been found inad-

(i) Substantial changes to a proposal so that the proposal is likely to have significant adverse environmental impacts (or lack of significant adverse impacts, if a DS [Determination of Significance] is being withdrawn); or

(ii) New information indicating a proposal's probable significant adverse environmental impacts. (This includes discovery of misrepresentation or lack of material disclosure.) A new threshold determination or SEIS is not required if probable significant adverse environmental impacts are covered by the range of alternatives and impacts analyzed in the existing environmental documents.

(c) For EISs, the agency concludes that its written comments on the DEIS [Draft EIS] warrant additional discussion for purposes of its action than that found in the lead agency's FEIS [Final EIS] (in which case the agency may prepare a supplemental EIS at its own expense).

(4) Existing documents may be used for a proposal by employing one or more of the following methods:

(a) "Adoption," where an agency may use all or part of an existing environmental document to meet its responsibilities under SEPA. *Agencies acting on the same proposal for which an environmental document was prepared are not required to adopt the document*; or

(b) "Incorporation by reference," where an agency preparing an environmental document includes all or part of an existing document by reference.

(c) An addendum, that adds analyses or information about a proposal but does not substantially change the analysis of significant impacts and alternatives in the existing environmental document.

(d) Preparation of a SEIS if there are:

(i) Substantial changes so that the proposal is likely to have significant adverse environmental impacts; or

(ii) New information indicating a proposal's probable significant adverse environmental impacts.

(e) If a proposal is substantially similar to one covered in an existing EIS, that EIS may be adopted; additional information may be provided in an addendum or SEIS (see (c) and (d) of this subsection).

(Emphasis added.)

WAC 197-11-630 provides procedures for adopting existing environmental documents:

(1) The agency adopting an existing environmental document must independently review the content of the document and determine that it meets the adopting agency's environmental review standards and needs for the proposal. However a document is not required to meet the adopting agency's own procedures for the preparation of environmental documents (such as circulation, commenting, and hearing requirements) to be adopted.

(2) An agency shall adopt an environmental document by identifying the document and stating why it is being adopted, using the adoption form substantially as in WAC 197-11-965. The adopting agency shall ensure that the adopted document is readily available to agencies and the public by:

(a) Sending a copy to agencies with jurisdiction that have not received the document, as shown by the distribution list for the adopted document; and

(b) Placing copies in libraries and other public offices, or by distributing copies to those who request one.

equate. WAC 197-11-610(3). First, there apparently is no dispute that DOT used the EIS unchanged. *See* WAC 197-11-600(3) ("Any agency acting on the same proposal shall use an environmental document unchanged," with some exceptions that do not apply here). And, second, Boss does not suggest that any court or other entity has found the EIS to be inadequate under NEPA.

Further, WAC 197-11-600(4)(a), which addresses the adoption of an existing "environmental document," provides that "[a]gencies acting on the same proposal for which an environmental document was prepared are not required to adopt the document." Here, DOT and the Federal Highway Administration clearly were acting on the same proposal when they prepared the joint EIS and, thus, SEPA's regulations exempted DOT from compliance with the adoption procedures.

---

(3) When an existing EIS is adopted and:

(a) A supplemental environmental impact statement or addendum is not being prepared, the agency shall circulate its statement of adoption as follows:

(i) The agency shall send copies of the adoption notice to the department of ecology, to agencies with jurisdiction, to cities/counties in which the proposal will be implemented, and to local agencies or political subdivisions whose public services would be changed as a result of implementation of the proposal.

(ii) The agency is encouraged to send the adoption notice to persons or organizations that have expressed an interest in the proposal or are known by the agency to have an interest in the type of proposal being considered, or the lead agency should announce the adoption in agency newsletters or through other means.

(iii) No action shall be taken on the proposal until seven days after the statement of adoption has been issued. The date of issuance shall be the date the statement of adoption has been sent to the department of ecology and other agencies and is publicly available.

(b) A SEIS is being prepared, the agency shall include the statement of adoption in the SEIS; or

(c) An addendum is being prepared, the agency shall include the statement of adoption with the addendum and circulate both as in subsection (3)(a) of this section.

(4) A copy of the adopted document must accompany the current proposal to the decision maker; the statement of adoption may be included.

(5) If known, the adopting agency shall disclose in its adoption notice when the adopted document or proposal it addresses is the subject of a pending appeal or has been found inadequate on appeal.

Boss suggests that the above reference to an "environmental document" does not include an EIS. But our reading of WAC 197-11-600 as a whole leads us to conclude otherwise. Subsection 4(e) specifically refers to an "existing EIS," which indicates that the phrase "existing document" in WAC 197-11-600(4) includes an EIS.

Thus, we agree with DOT that the adoption requirements apply only when a state or local agency seeks to use a NEPA EIS that was prepared for a substantially similar but different project. *See* WAC 197-11-600(4)(a), (e).

Consequently, Boss has not shown that the trial court erred in finding the EIS to be exempt from further SEPA review.

III. ATTORNEY FEES AND COSTS

In the concluding sentence of his appellate brief, Boss requests "costs and attorney fees as allowed by law." Appellant's Br. at 17. As he provides no legal authority to support his request, we deny it.

We affirm.

QUINN-BRINTNALL, A.C.J., and HOUGHTON, J., concur.