[Nos. 64072-1-I; 64171-9-I.  Division One.  January 24, 2011.]

DAVIDSON SERLES & ASSOCIATES, *Appellant*, v. THE CITY OF KIRKLAND ET AL., *Respondents*, TR CONTINENTAL PLAZA CORPORATION, *Appellant*.

618

*Jeffrey M. Eustis* (of *Aramburu & Eustis LLP*), for appellant Davidson Serles & Associates.

*David S. Mann* (of *Gendler & Mann LLP*), for appellant TR Continental Plaza Corporation.

*Robin Jenkinson, City Attorney*, for respondent City of Kirkland.

*George R. Hill* (of *McCullough Hill PS*), for respondents Touchstone Corporation and Touchstone KPP Development LLC.

¶1 DWYER, C.J. — The Growth Management Hearings Board has exclusive jurisdiction to review challenges to comprehensive plans and development regulations that are based on the State Environmental Policy Act (SEPA), chapter 43.21C RCW. Thus, a superior court lacks subject matter jurisdiction to review such challenges. Several of the appellants' claims herein can properly be raised only before the Growth Management Hearings Board. Accordingly, those claims were properly dismissed by the superior court on summary judgment.

¶2 Moreover, the appellants' challenge to the planned action ordinance adopted by the city of Kirkland was also properly dismissed. The appellants' only claim challenging the validity of the planned action ordinance was that the city of Kirkland's environmental impact statement (EIS) was inadequate. However, no EIS was required for the city of Kirkland to enact the planned action ordinance and, thus, an inadequate EIS could not form the basis of a claim challenging the planned action ordinance. Thus, dismissal was appropriate.

¶3 The trial court erred, however, by granting summary judgment on the appellants' spot zoning claim because the moving parties failed to timely raise the spot zoning issue in the summary judgment proceeding. Accordingly, we affirm in part and reverse in part the trial court's order granting summary judgment.

I

¶4 Touchstone Corporation and Touchstone KPP Development LLC (collectively Touchstone) own an 11.5 acre site

in downtown Kirkland known as Kirkland Parkplace. In April 2007, Touchstone and two other landowners applied to the city of Kirkland (City) to amend the City's comprehensive plan and zoning code to allow taller building heights, among other changes. The City then sponsored a proposal to adopt an ordinance establishing the area containing the three properties as a planned action area.

¶5 The City conducted a review of the environmental impacts of the proposed amendments and enactments. In April 2008, the City issued a draft EIS that evaluated only the proposed action and a "no action" scenario; it did not evaluate any alternative actions. In October 2008, the City issued the final EIS. The final EIS contained one alternative action, which was merely a slightly modified version of the proposed action.

¶6 The City then enacted several ordinances implementing the landowners' and the City's proposals. The City amended its comprehensive plan through Ordinance No. 4170. The City amended its zoning code through Ordinance No. 4171. The City also enacted Ordinance No. 4173 and Ordinance No. 4174 in order to amend other portions of the comprehensive plan and the zoning code. In addition, the City enacted Ordinance No. 4172, which adopted design guidelines, and Ordinance No. 4175, which created a planned action area.

¶7 Davidson Serles & Associates and TR Continental Plaza Corp., property owners with land neighboring Touchstone's Parkplace property to the southeast, each filed petitions for review with the Central Puget Sound Growth Management Hearings Board (Board), challenging the enactment of the comprehensive plan and zoning code amendments contained within Ordinances No. 4170 and No. 4171. They did not challenge the validity of the other four ordinances before the Board. Davidson Serles also brought suit directly in the superior court against the City and Touchstone, challenging Ordinances No. 4170, No. 4171, No. 4172, and No. 4175.

¶8 Davidson Serles' complaint states that

[t]he Court has jurisdiction over this matter under the Uniform Declaratory Judgments Act, Ch. 7.24 RCW to determine questions of construction and validity of city ordinances, under Ch. 7.40 [RCW] for the issuance of injunctive relief, under the grant of jurisdiction to superior courts through Article IV, Section 6 of the Washington State Constitution, and in the alternative under Chapter 36.70C RCW.

Clerk's Papers (CP) at 2. The complaint challenges both the legal adequacy of the EIS and the actions taken in reliance upon the EIS—namely, the enactment of the ordinances. The complaint recites that Davidson Serles' interests are adversely affected by the developments, projects, activities, and other actions authorized by the ordinances because they will cause "increased motor vehicle traffic and congestion, by creating pressures for spillover parking, . . . and by blocking light, air and views to and from its property, thereby interfering with the use and enjoyment of its property and rendering it a less desirable place to work." CP at 3.

¶9 The complaint alleges that "[a] planned action ordinance, and other legislation significantly affecting the environment, may only be lawfully enacted upon the preparation and adoption of a legally adequate EIS." CP at 7. The complaint then asserts that "[t]he City of Kirkland has acted in violation of the requirements of [SEPA]" by preparing an EIS that does not satisfy SEPA's requirements and by adopting the ordinances. CP at 7-8. In addition, the complaint asserts that by

singling out that separate ownership from the larger [zoning area] and creating for that ownership special planning and zoning classifications . . . whose requirements . . . are totally different from and inconsistent with the requirements for surrounding lands . . . the City Council has acted arbitrarily and unreasonably by bestowing special favors upon an individual property owner, by failing to act in the interest of the public at large and by engaging in spot zoning.

CP at 7-8. The complaint then requests that the superior court declare that the City's EIS fails to meet SEPA's requirements and that any actions taken in reliance upon the EIS, including the planned action ordinance, are null and void. TR Continental Plaza brought a complaint in superior court setting forth very similar allegations. The cases were consolidated in the superior court.

¶10 Touchstone moved for summary judgment, contending, among other things, that the superior court lacked subject matter jurisdiction over those matters that are properly raised only before the Board and that the plaintiffs' challenge to the planned action ordinance was an "orphan" SEPA appeal that challenged the EIS without challenging an underlying governmental action as required by SEPA. The City joined in Touchstone's motion.

¶11 In their response to the motion for summary judgment, Davidson Serles and TR Continental Plaza noted that, even were the superior court to grant the defendants' motion for summary judgment, the plaintiffs' spot zoning claim would remain. Nevertheless, the superior court granted the motion for summary judgment on the basis of lack of jurisdiction, dismissing *all* of the plaintiffs' claims.

¶12 Both Davidson Serles and TR Continental Plaza separately appealed from the trial court's order granting summary judgment, and their appeals were consolidated. For the sake of brevity, we will refer to these parties collectively as "Davidson."

II

¶13 We review de novo summary judgment decisions. *Boss v. Dep't of Transp.*, 113 Wn. App. 543, 547-48, 54 P.3d 207 (2002). Summary judgment is appropriate where the evidence, viewed in favor of the nonmoving party, shows that there is no issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). On summary judgment review, we may affirm the trial court's decision on any basis within the record. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989).

## III

¶14 Davidson first contends that the trial court erred by dismissing several of Davidson's claims on the basis that the superior court lacked subject matter jurisdiction over the claims because the Board has exclusive jurisdiction over such challenges. The trial court was correct.

■ ■ ¶15 "Growth management hearings boards have exclusive jurisdiction to determine compliance with the [Growth Management Act (GMA), chapter 36.70A RCW]." *Stafne v. Snohomish County*, 156 Wn. App. 667, 682, 234 P.3d 225 (2010) (citing *Woods v. Kittitas County*, 162 Wn.2d 597, 614-15, 174 P.3d 25 (2007)). RCW 36.70A.280 sets forth the matters subject to review by the Growth Management Hearings Board. The statute provides, in pertinent part:

The growth management hearings board shall hear and determine only those petitions alleging either:

(a) That, except as provided otherwise by this subsection, a state agency, county, or city planning under this chapter is not in compliance with the requirements of this chapter, chapter 90.58 RCW as it relates to the adoption of shoreline master programs or amendments thereto, or chapter 43.21C RCW as it relates to plans, development regulations, or amendments, adopted under RCW 36.70A.040 or chapter 90.58 RCW.

RCW 36.70A.280(1). The GMA, "clearly contemplates that challenges to comprehensive plan amendments [and development regulations] must be brought before the [Board]." *Coffey v. City of Walla Walla*, 145 Wn. App. 435, 441, 187 P.3d 272 (2008). Where a challenge is within the jurisdiction of the Growth Management Hearings Board, the superior court lacks jurisdiction over that challenge. *See, e.g., Woods*, 162 Wn.2d at 614-15 (a challenge to the adequacy of the comprehensive plan itself "is a matter within the exclusive jurisdiction of a [Growth Management Hearings Board (GMHB)], not a superior court"); *Somers v. Snohomish County*, 105 Wn. App. 937, 945, 21 P.3d 1165 (2001) (the superior court lacked jurisdiction to review the plaintiff's

challenge because "[t]he question of whether a county is in compliance with the GMA is an issue over which the GMHB has exclusive subject matter jurisdiction").

¶16 Davidson challenged Ordinances No. 4170 and No. 4171 before the Board. The Board properly had jurisdiction over Davidson's SEPA challenge to the City's comprehensive plan and zoning code amendments. The Board's jurisdiction over these challenges is exclusive. RCW 36.70A.280(1). Thus, the superior court does not have jurisdiction over such SEPA challenges. *See Woods*, 162 Wn.2d at 614-15; *Somers*, 105 Wn. App. at 942-43, 945.

■ ■ ¶17 Nevertheless, Davidson contends that the superior court has subject matter jurisdiction over its claims notwithstanding the Board's exclusive jurisdiction because Davidson brought its claims pursuant to article IV, section 6 of the Washington State Constitution. Article IV, section 6 provides, in relevant part:

> The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court . . . . Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective counties.

Our superior courts are vested with the power to review administrative decisions for illegal or manifestly arbitrary acts. *Saldin Sec., Inc. v. Snohomish County*, 134 Wn.2d 288, 292, 949 P.2d 370 (1998) (citing *Kreidler v. Eikenberry*, 111 Wn.2d 828, 837, 766 P.2d 438 (1989)). However, where "an opportunity for full and complete relief is available, the general rule that the existence of a statutory appeals process bars a court from exercising discretion and issuing a constitutional writ of certiorari must apply." *Torrance v. King County*, 136 Wn.2d 783, 791, 966 P.2d 891 (1998). "There must be something in the nature of the action that makes it apparent that the rights of the litigants will not be protected or full redress afforded without issuance of the

writ." *City of Olympia v. Thurston County Bd. of Comm'rs,* 131 Wn. App. 85, 96, 125 P.3d 997 (2005).

> The superior court is not a zoning review superauthority permitted to substitute its judgment for that of the legislative authority under the guise of a constitutional writ of certiorari. Such a result is inconsistent with the purpose of the constitutional writ of certiorari. A writ of certiorari is an extraordinary remedy granted at the discretion of the court, but it is not available when a party has failed to avail itself to other procedures that would have afforded the opportunity for an adequate remedy.

*Torrance,* 136 Wn.2d at 793-94.

¶18 The GMA establishes the exclusive means to review the City's amendments to its comprehensive plan and zoning code. This provided Davidson with an adequate mechanism for review, and constituted an adequate, alternative remedy to review by constitutional writ. *See Stafne,* 156 Wn. App. at 688. The availability of review through the Board bars the superior court herein from issuing a constitutional writ. *Torrance,* 136 Wn.2d at 791.

¶19 Davidson also contends that the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, provides a basis for the superior court to assume subject matter jurisdiction. However, "[a] party is not entitled to a declaratory judgment if there is an adequate alternative remedy available." *Stafne,* 156 Wn. App. at 688 (citing *Grandmaster Sheng-Yen Lu v. King County,* 110 Wn. App. 92, 98-99, 38 P.3d 1040 (2002)). Because the GMA establishes a means of review of the City's comprehensive plan and zoning code amendments, Davidson had an adequate alternative remedy.[1] *See Stafne,* 156 Wn. App. at 688.

---

[1] The provisions of the UDJA provide further support for this analysis. The UDJA explicitly provides that it does not apply to state agency action reviewable under the Administrative Procedure Act (APA), chapter 34.05 RCW. RCW 7.24.146. A judicial appeal from a decision of the Board arises through the APA. RCW 34.05.518. Thus, had Davidson properly brought its challenge before the Board, the UDJA could not be utilized to appeal the Board's decision on Davidson's claim. It would be incongruous, then, to allow Davidson to utilize the UDJA to raise the claim herein in superior court, considering that the UDJA would be

¶20 Davidson further contends that "under SEPA itself, our courts have uniformly set aside agency action rendered in violation of the statute's requirements." Appellants' Br. at 28. The cases cited by Davidson do not, however, address the question of whether the superior court has jurisdiction to review SEPA challenges to comprehensive plans and development regulations, which are properly within the jurisdiction of the Board. *See, e.g., Weyerhaeuser v. Pierce County*, 124 Wn.2d 26, 873 P.2d 498 (1994); *Klickitat County Citizens Against Imported Waste v. Klickitat County*, 122 Wn.2d 619, 860 P.2d 390, 866 P.2d 1256 (1993); *Lassila v. City of Wenatchee*, 89 Wn.2d 804, 576 P.2d 54 (1978).

¶21 The Board has exclusive jurisdiction to review SEPA challenges to comprehensive plans and development regulations; thus, the superior court lacks subject matter jurisdiction to review such challenges.[2] Because the statutory GMA appeal process provides an adequate remedy, Davidson can seek neither a constitutional writ pursuant to article IV, section 6 nor a declaratory judgment pursuant to chapter 7.24 RCW. Accordingly, the trial court properly dismissed Davidson's challenges to the City's amendments to the comprehensive plan through Ordinance No. 4170 and to the zoning code through Ordinance No. 4171.[3]

---

unavailable to Davidson had the claim properly been brought before the Board in the first instance.

[2] Our conclusion today is bolstered by a plain reading of the GMA. The GMA contains a specific provision providing for direct judicial review where all parties to the proceeding before the Board have agreed to such direct review in the superior court. RCW 36.70A.295. To allow direct review of challenges properly within the Board's exclusive jurisdiction outside of RCW 36.70A.295 would render the statutory provision meaningless.

[3] The City and Touchstone moved to dismiss on mootness grounds one of the issues in this appeal, namely the question of whether the superior court has overlapping jurisdiction with the Board to review challenges to comprehensive plans and development regulations based on allegations of an inadequate EIS.

"A case is moot if a court can no longer provide effective relief." *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984). "A moot case will be reviewed if its issue is a matter of continuing and substantial interest, it presents a question of a public nature which is likely to recur, and it is desirable to provide an authoritative determination for the future guidance of public officials." *Cathcart-*

IV

¶22 Davidson next contends that the trial court erred by dismissing Davidson's challenge to Ordinance No. 4172 because the design guidelines contained within the ordinance are not development regulations subject to the Board's jurisdiction. We disagree.

¶23 As discussed above, the Board has exclusive jurisdiction to review SEPA challenges to development regulations. We must determine whether the design guidelines contained within Ordinance No. 4172 are "development regulations" within the Board's purview, as articulated in the GMA.[4] "Development regulations" are defined within the GMA:

> "Development regulations" or "regulation" means the controls placed on development or land use activities by a county or city, including, but not limited to, zoning ordinances, critical areas ordinances, shoreline master programs, official controls, planned unit development ordinances, subdivision ordinances, and bind-

---

*Maltby-Clearview Cmty. Council v. Snohomish County*, 96 Wn.2d 201, 208, 634 P.2d 853 (1981).

With respect to the question of overlapping jurisdiction, the relief that Davidson requests is for us to determine that the superior court has subject matter jurisdiction over these claims and for us to remand to the superior court for a determination of whether the City's EIS was inadequate. However, the ordinances and the EIS that are the basis of Davidson's claims have since been supplemented. The City has completed a supplemental EIS and enacted new ordinances that "reaffirm" the City's adoption of the prior, challenged ordinances. Even were we to remand to the superior court to review the challenges to the comprehensive plan and development regulations, it would be futile for the superior court to review those claims because a supplemental EIS has been completed to remedy the inadequacies claimed by Davidson. The superior court could not now determine whether the originally challenged EIS was inadequate.

Although this issue may be moot, we nevertheless review the issue in order to clarify this point of law. The question of whether the superior court has jurisdiction to review SEPA challenges to comprehensive plans and development regulations is a matter of continuing and substantial interest, it presents a question of a public nature that is likely to recur, and it is desirable to provide an authoritative determination for the future guidance of the Board and the superior court. *See Cathcart-Maltby-Clearview Cmty. Council*, 96 Wn.2d at 208.

[4] Our primary goal when interpreting a statute is to determine and give effect to the legislature's intent. *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 555, 14 P.3d 133 (2000). Thus, our analysis begins with the GMA's plain language and ordinary meaning. *King County*, 142 Wn.2d at 555.

ing site plan ordinances together with any amendments thereto. A development regulation does not include a decision to approve a project permit application, as defined in RCW 36.70B.020,[5] even though the decision may be expressed in a resolution or ordinance of the legislative body of the county or city.

RCW 36.70A.030(7); *see also* WAC 365-196-800(1) ("Development regulations under the [GMA] are specific controls placed on development or land use activities by a county or city.").

¶24 "The GMA defines what a 'development regulation' is and, more helpfully, what it is not." *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 178, 4 P.3d 123 (2000). A "project permit application" is not a "development regulation." RCW 36.70A.030(7). "The items listed under 'project permit application' are specific permits or licenses; more general decisions such as the adoption of a comprehensive plan or subarea plan are not approvals of project permit applications." *Wenatchee Sportsmen*, 141 Wn.2d at 179 (citing RCW 36.70B.020).

¶25 Ordinance No. 4172, which incorporates the "Kirkland Parkplace Mixed Use Development Master Plan and Design Guidelines" into the Kirkland Municipal Code, provides the design review board with an additional set of design guidelines with which to review development permits. Ordinance No. 4172; KIRKLAND MUNICIPAL CODE 3.30.040. The ordinance therefore contemplates that specific project permits will be sought in the future. The ordinance contains "controls placed on development or land use activities," RCW 36.70A.030(7), by the City but is not itself a specific "project

---

[5] RCW 36.70B.020(4) defines "project permit application" or "project permit" as

any land use or environmental permit or license required from a local government for a project action, including but not limited to building permits, subdivisions, binding site plans, planned unit developments, conditional uses, shoreline substantial development permits, site plan review, permits or approvals required by critical area ordinances, site-specific rezones authorized by a comprehensive plan or subarea plan, but excluding the adoption or amendment of a comprehensive plan, subarea plan, or development regulations except as otherwise specifically included in this subsection.

permit," RCW 36.70B.020(4). The design guidelines were enacted to guide the development of Parkplace, and compliance with the design guidelines is required in order for a developer to obtain increased building heights and reduced setbacks. Ordinance No. 4172 controls height requirements and other aspects of development within the Parkplace area.[6] The design guidelines are "supplemental, not a substitution" to the City's municipal code and standard zoning regulations. CP at 59.

¶26 Ordinance No. 4172 is more similar to a zoning ordinance or planned unit development ordinance than to a specific permit. This ordinance is a development regulation within the scope of the GMA. Any SEPA challenge thereto must be made before the Board. RCW 36.70A.280(1). Dismissal on summary judgment was proper.

V

¶27 Davidson next contends that the superior court erred by dismissing Davidson's SEPA challenge to the planned action ordinance.[7] We disagree.

¶28 Davidson's only challenge to the planned action ordinance was that the City's EIS was inadequate. However, as we will explain below, no EIS was required for the City to enact the planned action ordinance. Thus, an inadequate EIS could not form the basis of a claim against

---

[6] For example, one section of the design guidelines requires that a minimum of 10 percent of the designated area "shall be activated pedestrian-oriented space, in the form of courtyards, plazas, winter atrium, etc." CP at 61 (Section 9). The same section also requires that all office buildings on the relevant area "will be designed to achieve a [Leadership in Energy and Environmental Design]-[Core and Shell] Gold threshold." CP at 61. Another section details widths for streets, parking, landscaping, and sidewalks. CP at 63-68 (Section 11). The design guidelines also require that "[a]ll service, loading and trash collection areas shall be screened by a combination of planting and architectural treatment." CP at 73 (Section 12). Additionally, the guidelines require a "step back" after the third level of the buildings within Parkplace. CP at 80 (Section 13).

[7] The parties do not dispute that the Board lacks jurisdiction to review challenges to a planned action ordinance. *See, e.g., Mildred LLC v. City of University Place*, No. 06-3-0022 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. Order of Dismissal Aug. 17, 2006); *Kent C.A.R.E.S. v. City of Kent*, No. 02-3-0015 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. Order on Motions Nov. 27, 2002).

the planned action ordinance, and dismissal of Davidson's claim was appropriate.[8]

¶29 SEPA specifically provides that local governments planning under the GMA may enact a planned action ordinance that allows subsequent projects within the parameters of the ordinance to avoid further environmental review. The statute provides, in pertinent part:

> In a county, city, or town planning under RCW 36.70A.040, a planned action, as provided for in subsection (2) of this section, does not require a threshold determination or the preparation of an environmental impact statement under this chapter, but is subject to environmental review and mitigation as provided in this chapter.
>
> . . . .
>
> (2)(a) For purposes of this section, a planned action means one or more types of project action that:
>
> (i) Are designated planned actions by an ordinance or resolution adopted by a county, city, or town planning under RCW 36.70A.040;
>
> (ii) Have had the significant impacts adequately addressed in an environmental impact statement prepared in conjunction with (A) a comprehensive plan or subarea plan adopted under chapter 36.70A RCW, or (B) a fully contained community, a master planned resort, a master planned development, or a phased project;
>
> (iii) Are subsequent or implementing projects for the proposals listed in (a)(ii) of this subsection;
>
> (iv) Are located within an urban growth area, as defined in RCW 36.70A.030;
>
> (v) Are not essential public facilities, as defined in RCW 36.70A.200; and
>
> (vi) Are consistent with a comprehensive plan adopted under chapter 36.70A RCW.

---

[8] The superior court dismissed Davidson's challenge to the planned action ordinance on the basis that the challenge was not ripe for review because it was not linked to a final government action. *See* RCW 43.21C.075(6)(c) (judicial review under SEPA must "be of the governmental action together with its accompanying environmental determinations"). Because we may affirm the trial court's decision on any basis within the record, *see LaMon*, 112 Wn.2d at 200-01, we need not decide whether the trial court erred.

(b) A county, city, or town shall limit planned actions to certain types of development or to specific geographical areas that are less extensive than the jurisdictional boundaries of the county, city, or town and may limit a planned action to a time period identified in the environmental impact statement or the ordinance or resolution adopted under this subsection.

RCW 43.21C.031. The SEPA rules provide procedures and requirements for adopting a planned action ordinance or resolution described in RCW 43.21C.031(2)(a)(i):

(1) If a GMA county/city chooses to designate a planned action, the planned action must be designated by ordinance or resolution. Public notice and opportunity for public comment shall be provided as part of the agency's process for adopting the ordinance or resolution.

(2) The ordinance or resolution:

(a) Shall describe the type(s) of project action being designated as a planned action;

(b) Shall describe how the planned action meets the criteria in WAC 197-11-164 (including specific reference to the EIS that addresses any significant environmental impacts of the planned action);

(c) Shall include a finding that the environmental impacts of the planned action have been identified and adequately addressed in the EIS, subject to project review under WAC 197-11-172; and

(d) Should identify any specific mitigation measures other than applicable development regulations that must be applied to a project for it to qualify as the planned action.

(3) If the GMA county/city has not limited the planned action to a specific time period identified in the EIS, it may do so in the ordinance or resolution designating the planned action.

(4) The GMA county/city is encouraged to provide a periodic review and update procedure for the planned action to monitor implementation and consider changes as warranted.

WAC 197-11-168.

¶30 "Review of a project proposed as a planned action is intended to be simpler and more focused than for other

projects." WAC 197-11-172(1). For the individual planned action projects

> [n]either a threshold determination nor an EIS will be required. Consequently, there will be no administrative SEPA procedural appeal (an appeal of whether the proper steps in the SEPA process were followed). The planned action project will continue through the permit process pursuant to any notice and other requirements contained in the development regulations.

WASH. STATE DEP'T OF ECOLOGY, STATE ENVIRONMENTAL POLICY ACT HANDBOOK § 7.4.2 (1998); *see also* WAC 197-11-172(2). No EIS is required for planned action projects because the environmental impacts of the individual planned action projects will have been addressed in an EIS prepared earlier in conjunction with one of the six activities listed in RCW 43-.21C.031(2)(a)(ii): a comprehensive plan,[9] a subarea plan,[10] a fully contained community,[11] a master planned resort,[12] a master planned development, or a phased project. In addition, the planned action ordinance is required to include any specific mitigation measures that must be followed in order for a later project to qualify under the ordinance. WAC 197-11-168(2)(d).[13]

¶31 SEPA requires the preparation of an EIS for any "major actions significantly affecting the quality of the environment." RCW 43.21C.030(2)(c). Declining to define "significantly affecting," our Supreme Court has held that "the procedural requirements of SEPA, which are merely

---

[9] RCW 36.70A.030(4).

[10] RCW 36.70A.130(2)(a)(ii); *see also* RCW 36.70A.080.

[11] RCW 36.70A.350.

[12] RCW 36.70A.360.

[13] Where an individual project does not meet the requirements of the planned action ordinance or where the earlier-completed EIS did not adequately address all probable significant adverse environmental impacts of a particular proposed project, that project does not qualify as a planned action project. WAC 197-11--172(2)(b). As a result, the project would be required to go through normal environmental review as a part of its project review, although the EIS earlier prepared for one of the six undertakings listed in RCW 43.21C.031(2)(a)(ii) could be utilized and referenced as an existing document. WAC 197-11-172(2)(b).

designed to provide full environmental information, should be invoked whenever more than a moderate effect on the quality of the environment is a reasonable probability." *Norway Hill Pres. & Prot. Ass'n v. King County Council*, 87 Wn.2d 267, 278, 552 P.2d 674 (1976); *see also King County v. Wash. State Boundary Review Bd.*, 122 Wn.2d 648, 664, 860 P.2d 1024 (1993) ("[A]n EIS should be prepared where the responsible agency determines that significant adverse environmental impacts are probable following the government action."); WAC 197-11-794(1), (2) ("(1) 'Significant' as used in SEPA means a reasonable likelihood of more than a moderate adverse impact on environmental quality. (2) Significance involves context and intensity . . . and does not lend itself to a formula or quantifiable test. . . . The severity of an impact should be weighed along with the likelihood of its occurrence.").

¶32 Under SEPA, evaluation of a proposal's environmental impacts requires examination of at least two relevant factors:

> "(1) the extent to which the action will cause adverse environmental effects in excess of those created by existing uses in the area, and (2) the absolute quantitative adverse environmental effects of the action itself, including the cumulative harm that results from its contribution to existing adverse conditions or uses in the affected area."

*Norway Hill*, 87 Wn.2d at 277 (quoting *Narrowsview Pres. Ass'n v. City of Tacoma*, 84 Wn.2d 416, 423, 526 P.2d 897 (1974)). "Where a proposal 'change[s] neither the actual current uses to which the land was put nor the impact of continued use on the surrounding environment,' that action is not a major action significantly affecting the environment and an EIS is not required." *Chuckanut Conservancy v. Dep't of Natural Res.*, 156 Wn. App. 274, 285, 232 P.3d 1154 (2010) (alteration in original) (quoting *ASARCO, Inc. v. Air Quality Coal.*, 92 Wn.2d 685, 706, 601 P.2d 501 (1979)).

¶33 A planned action ordinance enumerates particular "planned actions" that will be allowed to proceed without a

threshold determination or an EIS. SEPA authorizes such an approach because the planned action ordinance simply implements the existing land use policies and development regulations of a city or county planning under the GMA. The adoption of the planned action ordinance herein does not change the existing uses allowed within Parkplace, and the ordinance does not itself allow any environmental impacts that would not be allowed under already existing plans and regulations, the environmental impacts of which have already been evaluated. *See Chuckanut Conservancy*, 156 Wn. App. at 285 ("Where a proposal 'change[s] neither the actual current uses to which the land was put nor the impact of continued use on the surrounding environment,' that action is not a major action significantly affecting the environment and an EIS is not required." (alteration in original) (quoting *ASARCO*, 92 Wn.2d at 706)). There are no adverse impacts that result *from the planned action ordinance. See Chuckanut Conservancy*, 156 Wn. App. at 292.

¶34 The planned action ordinance merely simplifies and expedites the land use permit process by relying on the local government's preexisting land use plan policies and development regulations. The potential environmental impacts of planned action projects authorized by the planned action ordinance have already been addressed in an EIS that was earlier prepared in conjunction with one of the six undertakings listed in RCW 43.21C.031(2)(a)(ii). Because the potential environmental impacts will have already been analyzed, it would be unnecessarily duplicative to require an additional EIS in order to enact a planned action ordinance. *See Thornton Creek Legal Def. Fund v. City of Seattle*, 113 Wn. App. 34, 50, 52 P.3d 522 (2002) ("To avoid 'wasteful duplication of environmental analysis and to reduce delay,' the SEPA Rules encourage and facilitate reusing existing environmental documents." (quoting RICHARD L. SETTLE, THE WASHINGTON STATE ENVIRONMENTAL POLICY ACT: A LEGAL AND POLICY ANALYSIS § 15, at 209 (13th ed. 2001))). Suitably, then, the SEPA rules, in enumerating the procedures for adopting a planned action ordinance or

resolution, do not direct that the environmental impacts of enacting the planned action ordinance or resolution be evaluated.

¶35 For the reasons explained above, the adoption of a planned action ordinance itself is not a major action significantly affecting the environment. Thus, enacting the planned action ordinance is not an action for which an EIS is required. Accordingly, Davidson's claim that the planned action ordinance herein is based on an inadequate EIS is without merit. As such, summary judgment on this claim was appropriately granted.

VI

¶36 Davidson next contends that the superior court erred by dismissing all of Davidson's claims because the motion for summary judgment failed to address Davidson's spot zoning claim. We agree.

¶37 "It is the responsibility of the moving party to raise in its summary judgment motion all of the issues on which it believes it is entitled to summary judgment." *White v. Kent Med. Ctr., Inc.*, 61 Wn. App. 163, 168, 810 P.2d 4 (1991). Further, "[a]llowing the moving party to raise new issues in its rebuttal materials is improper because the nonmoving party has no opportunity to respond." *White*, 61 Wn. App. at 168. Thus,

> it is incumbent upon the moving party to determine what issues are susceptible to resolution by summary judgment, and to clearly state in its opening papers those issues upon which summary judgment is sought. If the moving party fails to do so, it may either strike and refile its motion or raise the new issues in another hearing at a later date.

*White*, 61 Wn. App. at 169. In our decision in *White*, we held that it was error for the trial court to rely on an issue as a basis for granting summary judgment when that issue was not raised until the moving party's reply memorandum. 61 Wn. App. at 169.

■ ¶38 Here, Touchstone's and the City's motion for summary judgment requested that the trial court dismiss all of Davidson's claims. However, neither the motion for summary judgment nor the trial court's order granting summary judgment addressed Davidson's claim of spot zoning.[14] Accordingly, it was error to dismiss the spot zoning claim.[15]

¶39 Touchstone and the City contend that summary judgment was nonetheless proper because Davidson cannot use the constitutional writ of review to obtain superior court review of the spot zoning claim because another avenue of appeal is available. They contend that the Board provides an avenue of appeal because the issue of spot zoning could have been raised to the superior court on appeal from the board decision. We disagree.

■ ¶40 The issue of spot zoning could not have been raised before the Board because the Board has jurisdiction to review only those claims that the comprehensive plan and development regulations do not comply with particular statutory provisions. *See* RCW 36.70A.280. Thus, the Board

---

[14] Generally "zoning ordinances are constitutional in principle as a valid exercise of the police power, and will be upheld if there is a substantial relation to the public health, safety, morals, or general welfare." *Lutz v. City of Longview*, 83 Wn.2d 566, 574, 520 P.2d 1374 (1974). However, " '[w]here differential zoning merely accommodates some private interest and bears no rational relationship to promoting legitimate public interest, it is arbitrary and capricious and hence spot zoning.' " *Citizens for Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861, 875-76, 947 P.2d 1208 (1997) (internal quotation marks omitted) (quoting RICHARD L. SETTLE, WASHINGTON LAND USE AND ENVIRONMENTAL LAW AND PRACTICE § 2.11(c) (1983)). "Spot zoning" is a zoning action " 'by which a smaller area is singled out of a larger area or district and specially zoned for a use classification totally different from and inconsistent with the classification of surrounding land, and not in accordance with the comprehensive plan. . . . The vice of a spot zone is its inevitable effect of granting a discriminatory benefit to one or a group of owners and to the detriment of their neighbors or the community without adequate public advantage or justification.' " *Lutz*, 83 Wn.2d at 573-74 (quoting *Smith v. Skagit County*, 75 Wn.2d 715, 743, 453 P.2d 832 (1969)).

[15] The City and Touchstone contend that the spot zoning claim was adequately raised so as to be an appropriate basis for summary judgment because Davidson raised it in its responsive memorandum and at oral argument. The parties have not submitted a transcript of the hearing for our review on appeal. Davidson's responsive memorandum raises the issue only to emphasize that the claim was not a subject of the present motion for summary judgment. Thus, the City's contention that the spot zoning claim was adequately raised is without support.

cannot review challenges to the comprehensive plan and development regulations based on constitutional challenges. *See Point Roberts Registered Voters Ass'n v. Whatcom County*, No. 00-2-0052, at 4 (W. Wash. Growth Mgmt. Hr'gs Bd. Final Decision & Order Apr. 6, 2001). Furthermore, because the issue could not have been raised before the Board, the issue could not be raised on an appeal from the Board decision. "An issue not raised before an agency may not be properly raised on appeal." *Manke Lumber Co. v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 113 Wn. App. 615, 630, 53 P.3d 1011 (2002) (citing RCW 34.05-.554(1)). The City's assertions here, which are to the contrary, border on the frivolous.

¶41 Affirmed in part. Reversed in part.

GROSSE and APPELWICK, JJ., concur.